IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSE FRANCISCO MEDINA-MUNOZ, | § § | |
| Petitioner, | § § | |
| v. | § § | 1:26-CV-195-RP |
| PAMELA JO BONDI, *in her official capacity as United States Attorney General*, et al., | § § § § | |
| Respondents. | § § | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Jose Francisco Medina-Munoz's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, filed on January 27, 2026. (Dkt. 1). On January 30, 2026, the Court ordered Respondents to show cause on or before February 2, 2026, as to why the petition should not be granted.[1] (Dkt. 3). On February 2, 2026, Respondents Pamela Jo Bondi, Kristi Lynn Noem, and Sylvester M. Ortega[2] (together, "Respondents") timely filed a response in opposition, (Dkt. 4), and on February 3, 2026, Petitioner filed a reply in support of his Petition,

---

[1] Respondents assert in their Response that the Court's Show Cause Order included a stay of removal that was impermissible under *Imran v. Harper*, No. 25-30370, 2026 WL 93131 (5th Cir. Jan. 13, 2026) (per curiam). (Resp., Dkt. 4, at 2). In that opinion—which is unpublished—the Fifth Circuit held that the district court lacked jurisdiction to grant the petitioner's request for a stay of removal, finding that the petitioner's request was a challenge to a removal order and was thereby barred by 8 U.S.C. § 1252(g). *Id.* at *1. In this case, however, even though Petitioner is subject to a removal order, Petitioner is instead challenging the lawfulness of his detention during ongoing removal proceedings. (Pet., Dkt. 1, at 1–2, 12). Unlike in *Imran*, his Petition includes no request for the Court to "halt his imminent removal." (*Id.* at 19–20 (specifying the relief sought)). *See id.* Accordingly, the Court's Order preventing Respondents from removing Petitioner from the United States or otherwise outside of this Division during the pendency of the litigation is not a grant of a request for a stay of removal. Rather, the Court was preserving its ability to hear this case in the near term, which it is permitted to do. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[T]he District Court had the power to preserve existing conditions while it was determining its own authority to grant injunctive relief."); *cf. Brownback v. King*, 592 U.S. 209, 218-19 (2021).
[2] All individual respondents were sued in their official capacities. The Response is filed only on behalf of the federal employees in this action. (Dkt. 4, at 1 n.1).

(Dkt. 5). Having considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant in part Petitioner's Petition for Writ of Habeas Corpus.

## I. BACKGROUND

Petitioner, a national and citizen of Mexico, is currently detained at T. Don Hutto Detention Center in Taylor, Texas. (Pet., Dkt. 1, at 3–4). Petitioner entered the United States in 2004 without inspection and was not apprehended at the time of entry. (*Id.* at 5). Since then, he has resided and worked in the United States. (*Id.*). In March 2024, he was arrested for driving under the influence. (*Id.*). He was subsequently detained by U.S. Immigration and Customs Enforcement ("ICE") agents, and removal proceedings were initiated against him. (*Id.*). Petitioner requested bond, and an immigration judge ordered his release upon the posting of a $15,000 bond. (*Id.*). On December 12, 2024, an immigration judge denied his application for relief from removal; this case is on appeal to the Board of Immigration Appeals ("BIA"). (*Id.* at 5; Order of Imm. Judge, Dkt. 4-1, at 1).

Subsequently, on October 3, 2025, ICE agents arrested Petitioner while he was reporting for his probation related to the March 2024 DWI offense. (*Id.*). At a bond hearing held on December 19, 2025, Petitioner's request for a redetermination of custody status was denied by the immigration judge, finding that the Immigration Court did not have jurisdiction to review his custody redetermination under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). (Order of Imm. Judge, Dkt. 1-2, at 10). In their response to Petitioner's habeas petition, Respondents assert that Petitioner is being detained "on a mandatory basis as an applicant for admission." (Resp., Dkt. 4, at 3).

Petitioner challenges his detention through a writ of habeas corpus under 28 U.S.C. § 2241. Petitioner brings claims that his ongoing detention without bond is unlawful in violation of the Immigration and Nationality Act ("INA"), his Fifth Amendment due process rights, and the Administrative Procedure Act. (Pet., Dkt. 1, at 12–19).

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Respondents argue that Department of Homeland Security ("DHS") "has full discretionary authority to revoke[] bond" under 8 U.S.C. § 1226(b) and that the Court lacks jurisdiction to review this discretionary decision regarding detention and revocation of bond. (Resp., Dkt. 4, at 3–4). Respondents cite to 8 U.S.C. § 1226(e), which states: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). (*Id.* at 4–5).

As many courts in this District have already found, this jurisdictional argument fails. *See, e.g.*, *Granados v. Noem*, No. SA-25-CA-01464-XR, 2025 WL 3296314, at *3–4 (W.D. Tex. Nov. 26, 2025); *Luna v. Warden*, No. EP-25-CV-00565-DCG, 2025 WL 3787494, at *5–6 (W.D. Tex. Dec. 29, 2025); *Silva v. Bondi*, No. 1:25-CV-2155-DAE, 2026 WL 90060, at *4 (W.D. Tex. Jan. 12, 2026). Section 1226(e) does not bar courts from reviewing statutory and constitutional challenges. *See Nielsen v. Preap*, 586 U.S. 392, 401 (2019) (holding that § 1226(e) does not bar courts from hearing "disputes" over "the extent of the statutory authority that the Government claims"); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) ("Section 1226(e) may strip us of jurisdiction to review judgments designated as discretionary under the pertinent language of the statute, but it does not deprive us of all authority to review statutory and constitutional challenges."). Here, even setting aside Petitioner's Fifth Amendment due process claim, Petitioner is "disput[ing] the extent of the statutory authority that the Government claims." *See Nielsen*, 586 U.S. at 401. Thus, the Court has jurisdiction to review Petitioner's challenge.

Moreover, Respondents' argument fails because the jurisdictional bar in § 1226(e) is inapplicable. As one court in this District put it:

3

> Respondents . . . claim that Section 1226(e) precludes the Court's review. . . . This subsection is (of course) located in Section 1226, which is not the detention authority that Respondents argue applies to Petitioner. In other words, Respondents simultaneously argue that Section 1226 doesn't apply where it would entitle Petitioner to a bond hearing but does apply where it would limit Petitioner's ability to seek judicial review. The Court finds this argument completely untenable.

*Luna*, No. EP-25-CV-00565-DCG, 2025 WL 3787494, at *5. Likewise, Respondents claim that Petitioner is being detained under § 1225; the Court is therefore unpersuaded that Respondents may now rely on the jurisdiction-stripping provision in § 1226(e).[3] As such, Respondents cannot assert a jurisdictional bar to the instant petition.[4]

### B. Petitioner's Petition for Writ of Habeas Corpus

At the heart of this dispute are two provisions of the INA: 8 U.S.C. §§ 1225(b)(2) and 1226, the statute's mandatory and discretionary detention provisions. Under § 1225(b)(2), the INA requires mandatory detention for a noncitizen who is either subject to expedited removal under § 1225(b)(1) or—at issue here—an "applicant for admission" who is "seeking admission," where the examining immigration officer determines the individual to not be "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2). Individuals detained under § 1225(b)(2) receive no bond hearing and can only be released on humanitarian parole at the arresting agency's discretion. *See Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018); 8 U.S.C. § 1192(d)(5).

By contrast, 8 U.S.C. § 1226(a) provides for the discretionary detention of noncitizens arrested "on a warrant." Section 1226 allows for release on bond and provides "procedural

---

[3] In other cases, Respondents put forth 8 U.S.C §§ 1252(b)(4), (b)(9), and (g) as bars to this Court's jurisdiction, which the Court also rejected. *See, e.g.*, *Guzman v. Bondi*, No. 1:25-CV-2055-RP, -- F. Supp. 3d --, 2025 WL 3724465, at *1–2 (W.D. Tex. Dec. 23, 2025).

[4] The Court also notes that, to the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile." *See Lorenzo C. P., v. Noem*, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025); *see also Shi v. Lyons*, No. 1:25-CV-274, -- F. Supp. 3d --, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025) (holding that administrative exhaustion would be futile in light of *Matter of Yajure Hurtado*).

protections that are not afforded under the mandatory detention statute, such as the right to a bond re-determination hearing in front of an Immigration Judge and a right to appeal any custody determination." *Chiliquinga Yumbillo v. Stamper*, No. 2:25-CV-00479-SDN, 2025 WL 2783642, at *2 (D. Me. Sept. 30, 2025).

Respondents contend that Petitioner's detention is governed by 8 U.S.C. § 1225(b), which they claim applies to any noncitizen found in the United States without ever having been admitted or paroled—regardless of how long such an individual has been present in the country. (Resp., Dkt. 4, at 5–6). This position relies on § 1225(a)(1)'s definition of an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Given this definition, "applicant for admission" would be a broad enough category to include an individual like Petitioner, who was not admitted to the United States, regardless of how long that individual has resided in the United States—here, approximately twenty-two years.

However, 8 U.S.C. § 1225(b)(2) references not just an "applicant for admission," but an "applicant for admission" who is "seeking admission." Many other courts both within and outside of this District have read this "seeking admission" requirement to mean a noncitizen present in the United States without admission who has recently arrived and is actively seeking admission, not a noncitizen who has been residing in the country for years. See *Aguilar v. Bondi*, No. 5:25-CV-01453-JKP, -- F. Supp. 3d --, 2025 WL 3471417, at *5 (W.D. Tex. Nov. 26, 2025); *Rojas Vargas v. Bondi*, No. 1:25-CV-01699-DAE, 2025 WL 3251728, at *3 (W.D. Tex. Nov. 5, 2025); *Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *22 (E.D.N.Y. Nov. 28, 2025); *Romero v. Hyde*, 795 F. Supp. 3d 271, 283–84 (D. Mass. 2025). In fact, again as noted by multiple other courts, reading § 1225(b)(2) as Respondents suggest would make "seeking admission" surplus language that has no effect on the meaning of the provision. *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass.

2025) ("Respondents' selective reading of the statute—which ignores its 'seeking admission' language— violates the rule against surplusage and negates the plain meaning of the text."); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488 (S.D.N.Y. 2025) ("If, as Respondents argue, § 1225(b)(2)(A) were intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute."); *Aguilar*, No. 5:25-CV-01453-JKP, at *6 (quoting id.) ("Respondents interpretation 'would render the phrase "seeking admission" in § 1225(b)(2)(A) mere surplusage.").

Similarly, reading § 1225(b)(2) as sweeping so broadly would also eliminate much of the meaning of § 1226: nearly every noncitizen would be subject to mandatory detention, making it unclear why the INA also contains a broadly worded discretionary-detention provision. See Lopez Benitez, 795 F. Supp. 3d at 490. 4 It is well-established that "[i]nterpretations of statutes and regulations that avoid surplusage are favored." *Sanderson Farms, Inc. v. Occupational Safety & Health Rev. Comm'n*, 964 F.3d 418, 425 (5th Cir. 2020). As a result, a more natural way to read the plain language of these two statutory sections alongside one another is to read § 1226 as governing detention of noncitizens already residing in the United States and § 1225 as governing detention of recently arrived noncitizens who are actively seeking admission to the country.

As noted above, the statutory definition of "applicant for admission" is broad enough—were it used on its own—to possibly encompass a noncitizen in Petitioner's position. The question is not, then, whether the INA defines "admission" or "admitted" in reference to lawful inspection and entry: it is whether the idea of "seeking admission" adds anything to § 1225(b)(2). Given that reading "seeking admission" to cabin § 1225(b)(2)'s application to recent entrants both avoids reading that language as mere surplusage and allows § 1225(b)(2) to fit more naturally with § 1226, the Court is persuaded by that textual reading.

This reading is further supported by legislative history, recent amendments, and longstanding agency practice. Both § 1225(b)(2) and § 1226 were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. The IIRIRA left in place an earlier distinction between noncitizens arrested in the interior of the country (not subject to mandatory detention) and noncitizens stopped at the border (subject to mandatory detention). *See Maldonado Vazquez v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *4 (D. Nev. Sept. 17, 2025). This dual approach was reflected by the Supreme Court in 2018 in Jennings, which did not squarely address the issue in the present case, but framed the distinction between § 1225 and § 1226 as follows: In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c). *Jennings*, 583 U.S. at 289 (emphasis added).

A recent amendment to the INA reinforces this reading. Earlier this year, the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), amended § 1226, authorizing mandatory detention for certain categories of individuals who entered the United States without inspection. Specifically, the Act created § 1226(c)(1)(E), which requires mandatory detention for people who both (1) are charged as being inadmissible for entry without inspection or lacking valid documentation to enter the United States **and** (2) have been arrested, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E). This amendment reinforces the idea that noncitizens who entered the country without inspection but have been present for years—i.e., are not actively "seeking admission"—are generally subject to discretionary detention under § 1226. If all noncitizens charged as inadmissible due to entry without inspection were already subject to mandatory detention under § 1225(b)(2), it would make no sense for Congress to have amended the statute to require mandatory detention for

7

specific subcategories of those individuals. *See Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *19 (W.D. Wash. Sept. 30, 2025).

The interpretation that § 1225 applies to recent entries and § 1226 applies to noncitizens already residing in the United States is also supported by longstanding agency regulations and practice. U.S. Department of Justice's Executive Office for Immigration Review ("EOIR") regulations drafted after the IIRIRA was passed reflect this distinction, and from 1996 to 2025, agencies consistently interpreted § 1225 and § 1226 as providing for mandatory detention of noncitizens arrested near international borders or who recently arrived in the United States and discretionary detention of noncitizens already residing in the United States. *See Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7 (W.D. Tex. Sept. 22, 2025); *Vasquez*, 2025 WL 2676082, at *15; *Rodriguez*, 2025 WL 2782499, at *24–26.

This approach changed in July 2025, when DHS introduced internal guidance directing that noncitizens long-present in the United States who had not been admitted were now to be treated "in the same manner that 'arriving aliens' have historically been treated," i.e., subject to mandatory detention under § 1225(b) and therefore ineligible for custody redetermination hearings in front of immigration judges or release except on parole granted by DHS. *Vasquez*, 2025 WL 2676082, at *9–10. This new agency interpretation was adopted by the BIA in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). There, the BIA held that the immigration judge "did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." *Id.* at 220.

This approach changed in July 2025, when DHS introduced internal guidance directing that noncitizens long-present in the United States who had not been admitted were now to be treated "in the same manner that 'arriving aliens' have historically been treated," i.e., subject to mandatory

detention under § 1225(b) and therefore ineligible for custody redetermination hearings in front of immigration judges or release except on parole granted by DHS. *Vasquez*, 2025 WL 2676082, at *9–10. This new agency interpretation was adopted by the Board of Immigration Appeals ("BIA") in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). There, the BIA held that the immigration judge "did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." *Id.* at 220.

*Matter of Yajure Hurtado* was a departure from the BIA's previous interpretation of the statute. *See Rodriguez*, 2025 WL 2782499, at *5. For example, in *Matter of Akhmedov*, 29 I. & N. Dec. 166 (BIA 2025), a decision from one month before *Matter of Yajure Hurtado*, the BIA applied § 1226 to the detention of a noncitizen who had entered the United States without inspection three years prior. That decision was designated as precedent by the U.S. Attorney General. *See Rodriguez*, 2025 WL 2782499, at *5. Moreover, in an unpublished 2023 decision dealing with the application of § 1225(a)(2) versus § 1226 to a noncitizen already present in the United States, the BIA itself said that it was "unaware of any precedent stating that an Immigration Judge lacks authority to redetermine the custody conditions of a respondent in removal proceedings under the circumstances here." *See id.* at *26. While the BIA's interpretation of the INA is not entitled to any deference by this court under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), *Matter of Yajure Hurtado*'s inconsistency with prior pronouncements reduces even its "power to persuade." *Loper Bright,* 603 U.S. at 402 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)); *see also Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *3 n.3 (S.D. Tex. Oct. 7, 2025) (collecting cases declining to follow *Matter of Yajure Hurtado* under *Loper Bright*).

District courts across the country have been weighing this new interpretation. Repeatedly, they have found that DHS and BIA's construction of the INA is incorrect and that petitioners who

have long resided in the United States but are being held under § 1225 are entitled to relief. *See Buenrostro-Mendez*, 2025 WL 2886346, at *3 ("As almost every district court to consider this issue has concluded, 'the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades' support finding that § 1226 applies to these circumstances.") (citing *Pizarro Reyes*, 2025 WL 2609425, at *4); *see also Lopez-Arevelo*, 2025 WL 2691828, at *7 ("In recent weeks, courts across the country have held that this new, expansive interpretation of mandatory detention under the INA is either incorrect or likely incorrect."); *Rodriguez*, 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sep. 30, 2025) (collecting cases and noting that "[e]very district court to address" the statutory question "has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025) (joining the "chorus" of courts concluding that § 1226 applies).

Finally, both Petitioner and Respondents raise the issue of the recent certification of a "Bond Eligible Class"[5] in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01843-SSS-BFM, in the United States District Court for the Central District of California. (Pet., Dkt. 1, at 11–12; Resp., Dkt. 4, at 6–13). In certifying this class, that court extended the declaratory relief granted in its prior order granting partial summary judgment, finding that the Department of Homeland Security "unacceptably collapse[d] § 1226 into nonexistence under a wide-reaching interpretation of 'applications for admission.'" *Id.* at *9; *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025). As such, Petitioner alleges that he is a member of the Bond Eligible Class and that Respondents are violating the declaratory judgment of the *Maldonado*

---

[5] The "Bond Eligible Class" includes "[a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025).

10

*Bautista* Court. (Pet., Dkt. 1, at 11–12). Respondents argue in response that the orders in *Maldonado Bautista* do not have preclusive effect in the instant case. (Resp., Dkt. 4, at 6–13).

For the reasons discussed above and cited by other district courts—the statute's text, the statute's history, congressional intent, and the consistent past application of the statute—the Court concludes that Petitioner is correct that his detention under § 1225(b)(2) is in violation of the INA.[6] Having determined that Petitioner cannot be detained under § 1225(b)(2) and that he is therefore entitled to relief, as described below, the Court does not reach Petitioner's constitutional or APA claims. Further, having decided the matter on statutory interpretation grounds, the Court does not reach the parties' arguments as to the effect of *Maldonado Bautista* on the instant case. Finally, because the Court has found that Petitioner cannot be detained under the statutory authority currently asserted by Respondents and therefore is entitled to release, the Court does not reach whether Respondents had the authority to revoke Petitioner's past bond.

### III. CONCLUSION

The foregoing order constitutes the Court's findings of fact and conclusions of law. For the reasons discussed above, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED** in part as follows.

1. Upon receipt of this Order, Respondents shall <u>immediately</u> release Petitioner from custody;

2. Respondents shall release Petitioner under conditions no more restrictive than those in place prior to the detention at issue in this case;

---

[6] The Court notes that in denying Petitioner's request for a custody redetermination, the immigration judge first found that they did not have jurisdiction to "hear bond requests or to grant bond to aliens who are present in the United States without admission," per *Matter of Yajure Hurtado*, but found in the alternative that Petitioner "is a danger to the community given his 2024 Driving While Intoxicated conviction at which time he operated the vehicle without a valid driver's license." (Order of Imm. Judge, Dkt. 1-2, at 10–11). Given this Court's finding that Petitioner's detention under § 1225(b)(2) is in violation of the INA, it is immaterial that the immigration judge determined in dicta that Petitioner is a danger to the community, as Petitioner was detained under statutory authority that does not apply to him.

11

3. As soon as is practicable, and no less than two hours before release, Respondents shall notify Petitioner's counsel by email[7] of the exact location and time of Petitioner's release;

4. Respondents are enjoined from further detaining Petitioner under the asserted detention authority, 8 U.S.C. § 1225.

**IT IS FURTHER ORDERED** that Respondents shall provide a status report on **or before February 6, 2026**, detailing their compliance with this Order.

**SIGNED** on February 3, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[7] Javier N. Maldonado, jmaldonado.law@gmail.com